UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LIUJIA HU,
                        Plaintiff,

-v-

BARCLAYS CAPITAL INC.,
                        Defendant.

24-CV-7580 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Liujia Hu brings this action asserting various forms of employment discrimination against Defendant Barclays Capital Inc. ("Barclays"). Barclays moves to stay the action and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"). For the reasons that follow, the motion is granted.

**I.      Background**

Hu, proceeding *pro se*, filed the complaint in this action on October 7, 2024. (ECF No. 1.)[1] Barclays moved to compel arbitration and stay the action on November 12, 2024 (ECF No. 15), and filed a supporting memorandum of law (ECF No. 18 ("Mem.").) Hu opposed the motion on November 22, 2024 (ECF No. 19 ("Opp.")), and Barclays replied on December 6, 2024 (ECF No. 22 ("Reply")). Hu subsequently filed two sur-reply letters. (ECF Nos. 23 and 28.)

**II.     Legal Standard**

The FAA "provides that an agreement to arbitrate is 'valid, irrevocable, and enforceable.'" *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (quoting 9 U.S.C. § 2.) "This provision establishes 'a liberal federal policy favoring arbitration

---

[1] Because only Barclays's motion to compel arbitration is currently before the Court, this Opinion omits a factual review of Hu's substantive allegations.

agreements,'" and "requires courts to enforce agreements to arbitrate according to their terms . . . even when the claims at issue are federal statutory claims." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). "Having made the bargain to arbitrate, the party should be held to it . . . ." *Arciniaga*, 460 F.3d at 235 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Unless the parties consent to dismissal, "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012), which "is determined by state contract law," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017). If the parties have so agreed, then arbitration is mandatory unless "the party attempting to avoid arbitration . . . 'show[s] that Congress intended to preclude a waiver of a judicial forum.'" *Arciniaga*, 460 F.3d at 235 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

If a valid arbitration agreement exists, the "next inquiry is related to the question of arbitrability, or, in other words, whether an arbitration agreement covers a specific issue." *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025). First, the court must ask "whether the court or the arbitrator should be the decision-maker on the question of arbitrability." *Id.* "[I]f it is for the court to make that determination," the court must then ask "whether the issues are within the scope of the arbitration agreement and if the agreement is enforceable." *Id.* While "[t]he FAA provides that the issue of arbitrability should presumptively be resolved by the courts, . . . [w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision . . . unless [the non-movant] challenged

2

the delegation provision specifically." *Id*. at 117-18 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) and *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).  Ordinarily arbitration provisions are "severable" from the remainder of a contract such that unconscionability challenges to the entire agreement go to the arbitrator, but "where a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) (quotation marks omitted).

Finally, because Hu is representing himself, the Court construes his filings liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up).

**III.   Discussion**

Neither party explicitly addresses choice of law, though Barclays implies that New York law controls matters of contract formation here.  (*See* Reply at 5-6.)  "[U]nder New York choice-of-law principles, courts apply . . . the law of the jurisdiction with the most significant relationship to the dispute." *Eccles v. Shamrock Cap. Advisors, LLC*, 42 N.Y.3d 321, 335-36 (2024).[2]  "In contract disputes, courts apply a center of gravity or grouping of contacts test to determine which jurisdiction . . . has the most significant relationship to the transaction and the parties." *Id.* (quotation marks omitted); *accord Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001).  Here, while Plaintiff resides in New Jersey, Defendant operates out of

---

[2] Federal courts exercising federal question jurisdiction are not necessarily bound to apply the choice-of-law rules of the state in which they sit, *see Pilon v. Discovery Commc'ns, LLC*, No. 24-CV-4760, 2025 WL 752244, at *4 n.2 (S.D.N.Y. Mar. 10, 2025), unlike when sitting in diversity, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Nonetheless, because this issue is not briefed, and because most lower courts apply *Klaxon* when exercising federal question jurisdiction, "the Court is content to apply New York's choice-of-law rules." *Pilon*, 2025 WL 752244, at *4 n.2.

New York, and the subject matter of the contract is Plaintiff's employment in New York. (Compl. at 2-3, 5; *see also id.* at 9-11.) The Court therefore determines that New York is the center of gravity and applies New York contract law.

"The elements necessary for a valid contract under New York law are 'offer, acceptance, consideration, mutual assent and intent to be bound.'" *Klug v. BurgherGray LLP*, No. 24-CV-6577, 2025 WL 774899, at *3 (S.D.N.Y. Mar. 11, 2025) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). "[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Id.* (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)). However, mutual assent need not take the form of a handwritten signature as long as it is "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). "Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id*. With respect to both paper and online contracts, the sufficiency of inquiry notice "often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.* "[A]n electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer*, 868 F.3d at 75 (cleaned up). Although "determinations regarding mutual assent and reasonable notice usually involve questions of fact," "[n]onetheless, on a motion to compel arbitration, [courts] may determine that an agreement to arbitrate exists where the notice

of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Id.* at 73, 76.

As to consideration, "so long as '[all parties] received something of value' under the contract, the contract [will] not be void for lack of consideration." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 374 (2d Cir. 2000) (quoting *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 476 (1993)). Arbitration agreements do not require separate consideration from the overall agreement in which they are embedded. *McCrae v. Oak St. Health, Inc.*, No. 24-CV-1670, 2025 WL 415389, at *4 (S.D.N.Y. Feb. 6, 2025).

Applying these principles, the Court concludes that it is clear that Hu formed a valid agreement to arbitrate with Barclays. Not only did Hu receive an offer letter in 2018 containing an arbitration clause (ECF No. 16-1 ("Offer Letter") at 2, 5), but he later received two reminders of his arbitration commitment in 2021 and 2022. (ECF No. 16-2 ("Promotion Letter") at 3-4; ECF No. 17-2 ("Terms and Conditions") at 2.) The agreements all independently require Hu to arbitrate the claims he has brought here. Hu signed the offer letter in ink (Offer Letter at 8), accepted a promotion conditioned on agreeing to the updated arbitration agreement in 2021 (Promotion Letter at 3; Mem. at 9), and implicitly accepted the updated terms and conditions in 2022 by continuing his employment despite an express warning that "[y]our continued employment . . . shall provide acceptance of the mutual agreement to arbitrate . . . ." (ECF No. 17-1 at 2; Mem. at 18). Hu was repeatedly provided with conspicuous notice of the arbitration agreement—often in bold or capitalized text and set off from the rest of the documents with separate headers—in three different ways, on three different dates. Any suggestion that Hu was

somehow deceived into accepting the agreements' conditions is unsupported.[3] Hu also cannot argue that the threat of termination from a lucrative career constitutes "duress" (Opp. at 5)—rather, it is settled law in New York that an agreement to exchange continued employment for a commitment to arbitrate is enforceable. *See Credit Suisse First Bos. Corp. v. Pitofsky*, 4 N.Y.3d 149, 155 (2005) ("[Respondents] received valuable consideration (continued, lucrative employment by [Petitioner]) for their acceptance of the new arbitration provisions."); *see also McCrae*, 2025 WL 415389, at *4 (collecting cases). Hu's other arguments concerning contract formation are similarly contrived and lack any factual basis.[4]

Hu next argues that the arbitration agreements are unconscionable. "Under New York law, on which both parties rely for their arguments on unconscionability, a contract is unconscionable when it is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)). "Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful

---

[3] Hu raises several quibbles with the phrasing of the documents, such as the title "terms and conditions" and the description of Hu's arbitration commitment as an "obligation" rather than a "waiver of rights." (Opp. at 3.) None of this language obscures anything about the contract, and the mere fact that Hu would have preferred different phrasing is no basis for releasing him from obligations he voluntarily undertook to secure and maintain employment.

[4] Hu is wrong that the agreements contradict one another. (*Cf.* Opp. at 4-5.) Each of the three agreements contemplates the involvement of either FINRA or the AAA, depending on the circumstances. (*Compare* Offer Letter at 5 *with* Promotion Letter at 4 *and* Terms and Conditions at 2.) Moreover, the email that references "an arbitral body otherwise determined" was the last in the sequence of three agreements, and in any event would expand, not diminish, Hu's rights. (ECF No. 17-1 at 2.) It thus provides no basis for invalidating the earlier agreements.

choice; the substantive element looks to the content of the contract, per se." *Id.* (brackets omitted) (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)).

Hu argues that the agreements are procedurally unconscionable because: the alternative to acceptance was termination; the 2021 agreement was "framed as a promotion letter" and was "printed in light gray text on a white background"; the arbitration provisions are "buried" in the bodies of the overall contracts; the agreements do not reproduce essential information about FINRA's and the AAA's rules; and the agreements fail to clearly distinguish between different Barclays entities. (Opp. at 15-17). However, courts have long upheld arbitration agreements signed in consideration of employment, even when mandatory. *See McCrae*, 2025 WL 415389, at \*4. And Hu's other complaints fail because no reasonable person would be so deluded by Barclays's formatting choices as to be deprived of meaningful choice. To the contrary, Barclays's formatting renders the arbitration clauses obvious and unmistakable. (*See, e.g.*, Offer Letter at 5 (separate header); Promotion Letter at 4 (separate header, bold font, capitalization, and different color); Terms and Conditions at 2 (separate header, repetition, bold font).) Hu is also a highly educated corporate executive—a Vice President on the data science team at a large financial institution (*see* Compl. at 26)—and, as evidenced by his *pro se* filings, has a sophisticated understanding of the law. He therefore was "unusually well-equipped by background, education, and training to negotiate an employment agreement." *Cf. Yost v. Everyrealm, Inc.*, No. 22-CV-6549, 2023 WL 2859160 at \*8 (S.D.N.Y. Apr. 10, 2023).

Regardless, even if the agreements were procedurally unconscionable, they were not substantively unconscionable. As Defendants note, Hu's arguments about excessive fees rely on a misunderstanding of FINRA and AAA rules. (*Compare* Opp. at 17-18, 21 *with* Reply at 13, 14 n.5 (explaining that the fee provisions Hu discusses apply only to customer-firm arbitrations, not

employee-firm arbitrations, and that Hu's fees would be capped at either $200 or $350 depending on the arbitral forum).) Hu provides no evidence that fees lower than the one he paid to file the instant lawsuit would be an excessive burden given his individual financial circumstances. *Cf. Yost*, 2023 WL 2859160 at *9-10 (explaining that, under New York law, the financial fairness of an arbitration agreement is to be examined on a case-by-case basis). And Hu is incorrect that arbitration provisions must be supported by "mutuality in obligations." (Opp. at 17 (capitalization altered).) "[B]oth the Court of Appeals for the Second Circuit and the New York State Court of Appeals have enforced arbitration clauses even where only one party has the capacity to trigger arbitration, expressly rejecting the notion that mutuality is required in the arbitration context." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (citing *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 451 (2d Cir. 1995) and *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 137 (1989)). Similarly, a third-party beneficiary may enforce an arbitration agreement even if that third party could not itself be forced to arbitrate. *Id.* Finally, it is plainly not unconscionable for a corporation to treat higher- and lower-ranked employees differently, even with respect to arbitration. (*Cf.* Opp. at 18.)

For the most part, Hu's sur-reply letters reiterate arguments made in his opposition. None of the new arguments Hu raises in those letters alter the Court's conclusion that the arbitration agreements were validly formed, and not unconscionable.[5]

---

[5] In one of Hu's sur-reply letters, he argues that termination of his employment at Barclays in 2022 would have jeopardized his immigration status at a time when he required stability in order to care for his pregnant wife, thereby rendering him particularly vulnerable to coercive bargaining at that time. (ECF No. 23 at 6.) The Court is aware of only one case where similar facts supported a finding of unconscionability, *see Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 202 (3d Cir. 2010), and that case is not binding authority. In any event, while immigration status may be a relevant consideration, the Court does not understand *Nino* as articulating a blanket rule automatically exempting all employees on work visas from arbitration agreements, nor would such a rule be workable in light of the liberal federal policy favoring arbitration. *Cf.*

**IV.     Conclusion**

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED. The case is hereby stayed pending arbitration.

The Clerk of Court is directed to close the motions at Docket Number 15 and 28 and to mark this case as stayed.

SO ORDERED.

Dated:  May 6, 2025
        New York, New York

                                              _____
                                              J. PAUL OETKEN
                                              United States District Judge

---

*CompuCredit Corp.*, 565 U.S. at 98.  Moreover, unlike in *Nino*, the agreements here are not substantively unconscionable, and Hu is a highly educated and sophisticated businessperson. Finally, Hu signed the initial agreement *before* commencing his employment at Barclays and thereby incurring his dependence on Barclays for maintaining his immigration status.  Thus, even if the "refresh" of the arbitration agreement in 2022 were void (Terms and Conditions at 2), Hu would still be bound at least by the 2018 agreement and would not be able to escape arbitration in this case (*see* Reply at 6 n.2).

9